UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS CODDEN,

        Plaintiff,

                                         CASE NO. 1:19-CV-676

v.

                                         HON. ROBERT J. JONKER

MANISTEE AREA PUBLIC SCHOOLS
BOARD OF EDUCATION, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER

This is a First Amendment retaliation case arising out of the non-renewal of Plaintiff Codden's contract as an employee of the Manistee Area Public Schools. Defendants move to dismiss the case (ECF No. 9) based on claim preclusion, arguing that Plaintiff's 2016 lawsuit against Defendant Stoneman and the Manistee Area Public Schools bars the new claim. The motion is fully briefed, and the Court has heard oral argument on the motion. Based on all matters of record, this is the decision of the Court.

### BACKGROUND

Plaintiff Codden brings this First Amendment retaliation claim against the Manistee Area Public Schools Board of Education ("MAPS"); Ronald Stoneman, Superintendent of MAPS; members and officers of the MAPS Board of Education, including Paul Antal, Paul Wehrmeister, Kris Thompson, Jim Thompson, and Richard Edmondson; and Julia Raddatz, the principal of a school within the MAPS system.[1] (ECF No. 1, PageID.2-3.) Plaintiff states that MAPS employed

[1] Plaintiff Codden states that he is suing the individual defendants in their individual capacities. As to each individual defendant, Plaintiff notes that he or she "at the time of the events described in the Complaint was, and presently is" in the position the Complaint identifies – e.g. Superintendent, Member of Board, Principal, etc.

him as a "paraprofessional" and wrestling coach beginning in September 2007. (Compl., ECF No. 1, PageID.3.)[2] In 2010, John Chandler became Superintendent of the Manistee Area Public Schools ("MAPS"). (*Id.*, PageID.4.) Mr. Chandler advocated various changes in school policies, some of which proved controversial. (*Id.*) Plaintiff Codden "was a known affiliate of Superintendent Chandler and frequently spoke on his behalf, and in favor of him and his policies, to the school board and to members of the community." (*Id.*) In 2012, Mr. Chandler appointed Plaintiff Codden to supervise an online educational program, the "Nova Net recovery program for at-risk students." (*Id.* PageID.5.) The position was a non-union, year-to-year contract position. (*Id.*) Plaintiff indicates that he performed his work as online supervisor of Nova Net from a classroom in the school of which Defendant Raddatz was principal. (*Id.*, PageID.6). He states that "Defendant Raddatz was, effectively, Plaintiff's supervisor in that she had the authority to direct the manner of his work performance, and to discipline Plaintiff, while he was employed as the 'online supervisor' in the Nova Net /YES Academy classroom." (*Id.*)

Mr. Chandler resigned as Superintendent in December 2014, and Defendant Ronald Stoneman became Superintendent of MAPS. (*Id.*, PageID.6-7.) According to Plaintiff Codden, Mr. Stoneman soon targeted him because of his previous support for former Superintendent Chandler. Plaintiff alleges that "Defendant Stoneman, with the approval and direction of Defendants Antal, Wehrmeister, Thompson, and Edmondson began searching for a suitable pretext to end Plaintiff's position with the school district" by declining to renew his contract. (*Id.*) In December 2015, Defendant Raddatz moved Plaintiff from his "online classroom position to a paraprofessional position[,]" which Plaintiff viewed as a demotion. (*Id.*, PageID.7.) In early 2016, Defendant Stoneman oversaw an investigation of Plaintiff's supervision of the wrestling team

---

[2] The Court accepts as true the allegations of the complaint for the sole purpose of deciding the motion to dismiss. The Court is making no findings of fact.

during tournament travel. (*Id.*, PageID.8-10). The investigation, which Plaintiff viewed as "fundamentally flawed," resulted in Defendant Stoneman issuing a letter of reprimand in May 2016 that described Plaintiff as having been untruthful. (*Id.*, PageID.9-10). In July 2016, Defendant Stoneman initiated an "undue influence" investigation of Plaintiff's conduct as a wrestling coach. (*Id.*, PageID.11) Plaintiff states that "[f]rom the beginning, Defendant Stoneman based his investigation on false pretenses." *Id.* According to Plaintiff, in August 2016 Defendant Stoneman provided the Michigan High School Athletic Association with a written summary of the investigation that contained false statements and recommended a two-year suspension of Mr. Codden's privileges to coach wrestling. (*Id.*, PageID.12.)

In September 2016, Defendant Stoneman advised Plaintiff that he had decided not to renew Plaintiff's contract "because you, for a second time, ignored a directive to be truthful during an investigatory interview." (*Id.*) The Board, including Defendants Antal, Wehrmeister, Thompson, and Edmonson, held a hearing and voted to accept Defendant Stoneman's recommendation not to renew Plaintiff's contract. (*Id.*, PageID.13.) According to Plaintiff, after the hearing, "Defendant Stoneman commented to reporter Scott Yoshonis of the Manistee News Advocate, referring to Plaintiff's employment, that '[i]t was my recommendation, which was not related to his wrestling infractions, it was related to his deception during the investigative process.'" (*Id.*) Defendant Stoneman's statement "was reported on September 14, 2016." (*Id.*)[3]

---

[3] On September 21, 2016, Plaintiff Codden and other community members filed a recall petition with Manistee Area Election Commission (the "commission") seeking to recall Defendants Wehrmeister, Antal, and Edmondson from their positions on the school board because of the decision upholding Defendant Stoneman's decision not to renew Plaintiff's employment contract. (*Id.*, PageID.14.)

### THE FIRST LAWSUIT

In November 2016, Plaintiff Codden sued Defendant Stoneman and Defendant MAPS, alleging a single count of defamation based on Defendant Stoneman's "September 14, 2016 statement to the Manistee News Advocate that Plaintiff had engaged in 'deception during the investigative process.'" (*Id.*, PageID.15-16.) The complaint in the 2016 lawsuit names as defendants "Manistee Area Public Schools and Ronald J. Stoneman, Superintendent of Manistee Area Public Schools." (ECF No. 9-2, PageID.90.) The 2016 complaint notes that Plaintiff received notice that his employment would not be renewed for the 2016-2017 school year "because you, for a second time, ignored a directive to be truthful during an investigatory interview." (*Id.*, PageID.92.) In the 2016 lawsuit, Plaintiff contended that he was truthful during all the interviews referenced in the termination letter and that Defendant Stoneman and MAPS wrongfully terminated his employment. (*Id.*, PageID.91-92.) Defendant Stoneman and the Manistee Area Public Schools sought and received summary judgment in their favor based on governmental immunity under state law.

### THIS LAWSUIT

On August 23, 2019, Plaintiff filed this lawsuit. He claims that Defendants retaliated against him by not renewing his contract in September of 2016 because he promoted the use of an online curriculum and "affiliate[ed] with" and supported former Superintendent Chandler. (*Id.*, PageID.20.)[4] Plaintiff asserts that Defendant Stoneman retaliated against Plaintiff by "subjecting him to heightened and unreasonable employment scrutiny" through two baseless investigations; "knowingly and intentionally making false and untruthful statements" throughout the undue

---

[4] Plaintiff also claims that Defendants retaliated because he "affiliate[ed] with" and support[ed] the recall campaign against Defendants Edmondson, Wehrmeister, and Antal" and because he sued Defendant Stoneman for defamation, but his own allegations indicate those events took place after the non-renewal decision. They could not plausibly be linked to the non-renewal.

influence investigation; recommending against renewing Plaintiff's employment contract; "[f]alsely asserting to the press at large that Plaintiff had made false statements during the investigations, warranting [Plaintiff's] termination"; and interfering with continuation of Plaintiff's insurance coverage. (*Id.*, PageID.19-20.)[5] Plaintiff claims Defendant Raddatz, principal at a MAPS system school, retaliated "by demoting him from the 'online supervisor' [of Nova Net] position to a paraprofessional position." (*Id.*, PageID.20.) According to Plaintiff, Defendants Antal, Wehrmeister, Kris Thompson, Edmondson, and Jim Thompson retaliated by "approving, ratifying, and encouraging the decision to subject him to heightened employment scrutiny with the intent of developing a pretext to terminate his employment and 'get rid of the John Chandler people'"; approving Defendant Stoneman's recommendation against renewing Plaintiff's employment contract; and interfering with the continuation of Plaintiff's insurance coverage. (*Id.*, PageID.21.) He states that MAPS took adverse action based on policy Defendants Antal, Wehrmeister, Thompson, and Edmondson made in their roles as "ultimate decision-makers." (*Id.*, PageID.21-22.) All this conduct took place before the September 2016 non-renewal decision.

Defendants now seek dismissal of the present lawsuit, arguing that res judicata bars Plaintiff's claims.

## LEGAL STANDARDS

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 5, 81 (1984). "Federal courts routinely recognize the claim-preclusion effects of state-court judgments, both as to claims that arise under state law and as to federal statutory and constitutional

---

[5] The two Counts related to insurance benefits were resolved and dismissed by stipulation early in the case. (ECF No. 8.) Only the First Amendment retaliation claim remains.

claims. Issue preclusion is also recognized…." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *FEDERAL PRACTICE & PROCEDURE* §4469 (3d ed. 2019).

The doctrine of res judicata exists to prevents multiple suits litigating the same claim. *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386 (2004). Under Michigan law, the claim preclusion aspect of res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits; (2) both actions involve the same parties or their privies; and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan courts "take[] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

## DISCUSSION

No one disputes that the dismissal of the 2016 lawsuit was a final decision on the merits for the purpose of the res judicata analysis. The parties disagree about whether the other two elements of res judicata are satisfied – that is, whether Defendants are the same parties or in privity with the defendants in the 2016 lawsuit, and whether the claims in the present lawsuit reasonably could have been raised in the first. The Court finds that claim preclusion applies. The root of the dispute between Plaintiff and MAPS under the leadership of Superintendent Stoneman is whether Plaintiff was truthful, or not, during investigations instigated by Defendant Stoneman. Plaintiff has always maintained that he was honest, and that Defendant Stoneman was simply working to create a pretextual basis for MAPS not to renew his contract when the real reason was Plaintiff's advocacy for policies and people at odds with Defendant Stoneman. In the original lawsuit, Plaintiff packaged this core factual claim in a state law defamation package and lost. He now tries to package the same factual bundle in a First Amendment retaliation package – an alternate theory

6

that could readily have been brought in his original lawsuit. Having chosen not to do that, Plaintiff should not get a second bite now.

### 1.      Privity

The Court finds that Defendants here are the same parties or in privity with the defendants in the 2016 lawsuit. To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich. at 122. "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the non-party are presented and protected by the party in the litigation." *Id.* (quoting *Baraga Co. v. State Tax Comm.*, 466 Mich. 264, 269-70, 645 N.W.2d 13 (2002)).

Such a substantial identity of interests and working functional relationship exists between the defendants in the 2016 lawsuit and Defendants in this case. The fundamental harm Plaintiff claims is loss of his contractual relationship with MAPS. Defendants are all either school board members or administrators of MAPS. All the misconduct Plaintiff alleges arises out of Defendants' performance of duties on behalf of MAPS and by virtue of their positions with MAPS. Plaintiff is not making a single factual claim against anyone for statements or conduct outside their respective roles on behalf of MAPS. Defendants are "so identified in interest" with MAPS that they "represent[] the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee" in the context of this case and the 2016 lawsuit. *See Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12-13, 672 N.W. 2d 351 (2003). The privity requirement is satisfied.

Plaintiff's invocation of the rule of differing capacities does not persuade the Court otherwise. This rule is simply a special application of the general rule requiring privity. Here,

Plaintiff is complaining only about what each Defendant was doing in that Defendant's role on behalf of MAPS. Each Defendant may well be individually accountable for his or her conduct as a board member or administrator of MAPS. But the only harm about which Plaintiff is fundamentally complaining is the decision of MAPS not to renew his contract based on Defendant Stoneman's claim that Plaintiff was dishonest in investigations. In both the original case and this case, Plaintiff attempted to hold both MAPS and the administration and administrators he named accountable for that decision, meaning he was effectively bringing both individual and official capacity claims in both cases. The only difference here is that he added nine board members and administrators to the mix this time, but all for the same alleged harm and wrong. On Plaintiff's narrow theory of privity, he could bring a multiplicity of lawsuits against MAPS first, and then each one of its administrators and board members – one at a time – all to redress the exact same claimed harm. That is exactly the kind of litigation scenario claim preclusion is meant to prevent.

None of the cases Plaintiff cites to support the application of the rule here changes the analysis. The only Michigan case Plaintiff cites is *Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich. App. 110, 115, 448 N.W. 2d 722 (1989). *Wildfong* actually hurts Plaintiff's position. In *Wildfong*, an insurance company defended a fire insurance claim with an arson defense but ultimately reached a settlement with its insured corporation. The individual shareholders and officers of the family corporation signed the release in their corporate capacities. They then brought a second lawsuit in their individual capacities for the same fire loss. The Court of Appeals affirmed dismissal of the new lawsuit based on Michigan law claim preclusion. Even though the stated capacities were different, the same fundamental alleged harm and interests were at stake: namely, a burned warehouse. The same thing is true here: the one and only harm asserted is the MAPS decision not to renew the employment contract.

Plaintiff also relies on *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003), but that case does not involve Michigan res judicata law and so is beside the point. Moreover, in *Mitchell*, the plaintiff raised exclusively official capacity claims in the first lawsuit, naming individuals only as the functional stand-ins for the Post Office itself. In this case, Plaintiff sought to impose liability on both MAPS and Superintendent Stoneman in the original case, just as he is trying to do here on a different legal theory. It is also worth noting that the *Mitchell* court ultimately affirmed dismissal of all individual and official capacity claims against all defendants.

*Gentry v. Wayne County*, No. 10-cv-11714, 2014 WL 12656276 (E.D. Mich. March 31, 2014), is also inapplicable. In *Gentry*, the original state court case for excessive force was filed against the individual officer only, and not the County itself, or any County official. The second lawsuit in federal court asserted a *Monell* claim against the County. The federal district court naturally concluded that this did not involve any claim splitting; to the contrary, the *Monell* claim against the County was distinct from the individual excessive force case against the officer who fired the shot, and so there was no privity and no basis to apply claim preclusion. Here, Plaintiff attempted to hold MAPS itself and individual administrators responsible in both the original case and this new one.

### 2.      Ability to Raise

Plaintiff Codden could have raised his First Amendment retaliation claim in the 2016 lawsuit but did not do so. "Res judicata bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* at 123. Michigan has adopted the "transactional" test, which provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give[s] rise to the assertion of relief." *Id.* (quotation marks omitted). Under the transactional approach, "a claim

is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff … and regardless of the variations in the evidence needed to support the theories or rights.'" *Id.* (quoting *River Park, Inc. v. Highland Park*, 184 Ill. 2d 290, 309) (1998) (quoting Restatement (Second) of Judgments § 24)). The same operative facts that give rise to the defamation claim Plaintiff raised in 2016 underlie his First Amendment retaliation claim now. Both cases center on the decision not to renew Plaintiff's contract. Both cases involve Plaintiff's allegations that Defendant Stoneman falsely accused him of dishonest and otherwise improper conduct. The record reflects no obstacle that would have prevented Plaintiff from bringing the First Amendment retaliation claim in the 2016 lawsuit.[6] This matter could and should have been resolved in the original litigation. The third element of res judicata is satisfied.

CONCLUSION

For these reasons, the Court concludes that res judicata bars the case and that dismissal is appropriate.

**ACCORDINGLY, IT IS ORDERED**:

Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**.

Dated:   June 26, 2020        /s/ Robert J. Jonker
                             ROBERT J. JONKER
                             CHIEF UNITED STATES DISTRICT JUDGE

---

[6]During oral argument, the Court asked Plaintiff's counsel, who did not represent Plaintiff in the 2016 lawsuit, why Plaintiff had not asserted the First Amendment claim and named all the Defendants in the original litigation. Plaintiff's counsel indicated that the previous counsel had relationships with Defendant Board Members that influenced the decision. This lies beyond the scope of the 12(b)(6) record, and the Court does not rely on it in ruling on the motion.